# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BALDO BELLO, | ) |
|     Plaintiff, | ) ) ) |
| vs. | )    No. 14 C 1718 |
| VILLAGE OF SKOKIE, ANTHONY SCARPELLI, ALFREDO LOPEZ, MICHAEL KRUPNIK, CHRISTA BALLOWE, and ALBERT RIGONI, | ) ) ) ) ) ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Baldo Bello, a police officer employed by the Village of Skokie and a staff sergeant in the United States Marine Corps Reserve, has sued Skokie; police chief Anthony Scarpelli; deputy chief Alfredo Lopez; commander Michael Krupnik; Christa Ballowe, the Village's personnel director; and Albert Rigoni, the Village's manager and chief administrative officer. Bello asserts claims for: 1) discrimination and retaliation under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4311 (counts 1 and 2), 2) violations of the First and Fourteenth Amendments under 42 U.S.C. § 1983 (counts 3 and 4), and 3) breach of the Illinois Whistleblower Act (IWA), 740 ILCS 174/5 (count 5). Bello seeks declaratory and injunctive relief, as well as compensatory, liquidated, and punitive damages.

The defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Bello's claims. They argue that: 1) Bello has failed to assert a viable claim of

discrimination or retaliation under USERRA, 2) USERRA supersedes his claims under section 1983, and 3) he has not alleged actionable conduct under IWA. For the reasons stated below, the Court dismisses Bello's section 1983 claims but declines to dismiss his claims under USERRA and IWA.

**Background**

The Court has taken the following facts from Bello's amended complaint. The Court "accept[s] all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[ ]." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014).

Bello joined the Marine Corps in 2001 and currently serves in the Marine Corps Reserve as a staff sergeant. This requires him to attend training at least one weekend per month for three to four days.

On January 3, 2006, Bello joined the Skokie Police Department as a police officer. A collective bargaining agreement (CBA) governs the terms of employment for Skokie police officers. Bello alleges that section 8.4 of the CBA states that "'an employee will normally have 9 regular days off (RDOs) per calendar month.'" Am. Compl. ¶ 31. He says that Article IX of the CBA "guarantees employees the right to take different types of leaves of absence, specifically: sick leave, funeral leave, jury leave, military leave . . . ." *Id.* ¶ 32. Bello alleges that Skokie police officers are required to submit their requested RDOs a few weeks before the beginning of each month. They request leave in the same way. Bello alleges that in preparing officers' monthly schedules, the police department takes their RDO and leave requests into account but does not guarantee that they will be honored and retains the authority to make any final scheduling decisions.

2

.       Bello alleges that before the beginning of each month, he requests military leave to attend his training as well as separate RDOs.  Prior to September 2012, he says, the police department regularly granted his requests.  Around September 12, 2012, however, commander Krupnik and personnel director Ballowe met with Bello to discuss a proposed policy requiring military members to use their RDOs to fulfill any military obligations rather than giving them separate military leave.

On September 20, 2012, Bello submitted a memorandum to all of the individual defendants in which he complained that the new policy would violate federal and state law.  Around May 6, 2013, Bello communicated with Ballowe about his and another officer's request for military leave "as they related to the provisions of USERRA" and a similar Illinois statute.  *Id.* ¶ 46.  Around May 17, 2013, Bello complained that he and other officers were being discriminated against on the basis of their military service in violation of federal and state law.  That day, police chief Scarpelli told Bello that he was no longer permitted to communicate with Ballowe about military leave.  Also on May 17, 2013, Bello filed a formal grievance with Scarpelli about the new policy, again alleging that the policy would violate federal and state law.

In June 2013, Skokie implemented the new policy.  As a result, the police department began scheduling Bello's RDOs to coincide with the days he had requested for military leave.  On June 18, 2013, Scarpelli overruled Bello's grievance.

In September 2013, command staff accused Bello of misconduct for using what Bello refers to in the complaint as "an expression commonly used by members of the Marine Corps in order to indicate affirmation, acknowledgment, or readiness," *id.* ¶ 72, even though he had used the expression for years without incident.  Around October 1,

3

2013, Krupnik placed Bello on administrative leave "with the knowledge and consent of the other defendants." *Id.* ¶ 74. Around October 7, 2013, Deputy Chief Lopez, again with the knowledge and consent of the other defendants, advised Bello that he was to remain on administrative leave (the complaint does not describe the length of the administrative leave). Around October 14, 2013, Bello was told to report for "desk duty" the next day. *Id.* ¶ 80. Once more, Bello says, all of the defendants were aware of and consented to the reassignment. Around October 15, 2013, Lopez suspended Bello for one day for insubordination.

On March 12, 2014, Bello filed this suit. He filed an amended complaint on June 9, 2014 and a corrected amended complaint three days later. As indicated earlier, the defendants moved to dismiss all of Bello's claims.

## Discussion

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The defendants argue as a preliminary matter that Bello's claims against the individual defendants should be dismissed because Bello "voluntarily withdrew" them in his amended complaint. Defs.' Opening Br. at 6. They say that in the amended complaint, "[p]laintiff has not made allegations of tortious conduct . . . . Plaintiff's allegations hinge upon and challenge the Village's RDO policy." Defs.' Reply at 3.

4

"Moreover . . . a suit against government employees in their official capacity under §1983 should be treated as a suit against the government . . . ." Defs.' Opening Br. at 6. In response, Bello says that his "counsel's intent in removing the individual-capacity language was simply to eliminate unnecessary verbiage . . . . [T]he complaint contains specific allegations regarding the actions that each individual defendant took . . . ." Pl.'s Resp. Br. at 2.

Defendants' arguments lack merit. Bello's amended complaint does not specify if he is suing the individual defendants in their individual or official capacities. In establishing a pleading "regime for § 1983 claims that do not specify the capacity in which the defendant has been sued," the Seventh Circuit has ruled that "[w]here the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity." *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). An official-capacity suit is "another way of pleading an action against an entity of which an officer is an agent," whereas an individual capacity suit "seek[s] to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo,* 502 U.S. 21, 25 (1991).

Bello's complaint makes it sufficiently clear that he is, in fact, asserting claims against the defendants in their individual capacities. For instance, he alleges that "[i]n each and every month from June 2013 and continuing to the date of this complaint, Defendants have ignored Officer Bello's requests and have scheduled his RDOs to coincide with his military obligations rather than granting his request for military leave." *Id.* ¶ 59. This and other similar assertions are the sort of allegations that seek to

impose individual liability, not (or not just) liability on a governmental entity. The Court also notes that Bello seeks punitive damages, another indication of an individual capacity claim. *See Miller*, 220 F.3d at 494 (finding a claim for punitive damages as a strong indication of an individual-capacity claim due to its unavailability on a claim under section 1983 against a governmental entity).

**A.     USERRA**

   **1.     Discrimination (Count 1)**

      **a.     Benefit of employment**

Section 4311(a) of USERRA prohibits discrimination "against persons who serve in the uniformed services" through the denial of "any benefit of employment by an employer on the basis of that membership." Bello alleges that the defendants violated this provision by denying him the opportunity to schedule his RDOs without regard to his requests for military leave because he is a military member. Am. Compl. ¶ 91. As he puts it,

> [u]nder the Village's previous scheduling policy, Plaintiff was allowed to select nine RDOs per month in addition to his regularly scheduled military leave. . . . Under the new policy, however, Plaintiff is forced to schedule his RDOs to coincide with his military obligations in lieu of being granted leave. Unlike Plaintiff, other employees are still allowed to schedule their RDOs in addition to any requests for leave without the two coinciding.

Pl.'s Resp. Br. at 5-6.

The defendants argue that Bello has failed to allege a viable claim of discrimination under USERRA. They define the benefit that Bello claims he has been denied as "hav[ing] his RDOs scheduled *the way he wants them to be scheduled*." Defs.' Reply at 11. As the Court has noted, however, Bello does not allege that he is guaranteed separate RDOs and military leave; rather, he alleges that in scheduling

6

RDOs, defendants are treating military leave different from other forms of leave guaranteed by the CBA.

The defendants maintain that an employer's "scheduling policy" is not a benefit under USERRA. Defs.' Opening Br. at 7. Section 4303(2) of USERRA defines a "benefit of employment" as the "terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account or interest . . . that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes . . . the opportunity to select work hours . . . ." Thus the statute expressly recognizes the opportunity to select one's work hours as a benefit of employment that may not be denied on the basis of military membership.

The defendants cite *Crews v. City of Mt. Vernon*, 567 F.3d 860 (7th Cir. 2009), for the proposition that an employer's scheduling policy is not a benefit of employment. In *Crews*, the plaintiff belonged to both the Army National Guard and the Mount Vernon police department. The Guard required him to attend drills approximately one weekend per month. Mount Vernon rescinded a policy that permitted Guard members to schedule their days off during the weekends so that they could attend drills. "By allowing Guard employees to reschedule their weekend shifts missed for drill, the policy required the City to pay these employees to work shifts during the regular work week that were already staffed." *Id.* at 863.

The Court concluded that Mount Vernon's previous policy was not a benefit of employment under USERRA because it had not been generally available to all employees. In other words, all Mount Vernon had done was to withdraw a preferential policy. The Court distinguished section 4311 of USERRA, which "requires a showing of

7

discriminatory treatment," from other provisions of the statute, which "encourage[ ] military service by granting service members rights with respect to civilian employment that are not available to similarly situated, nonmilitary employees" (and thereby require employers to affirmatively take certain actions). *Id.* at 867.

*Crews* does not stand for the proposition that an employer's scheduling policy cannot constitute a benefit of employment under USERRA. Rather, it says that USERRA does not require members of the National Guard or military reserves to receive preferential treatment not available to non-Guard, non-reserve employees. Unlike the plaintiff in *Crews*, Bello has not alleged a denial of preferential treatment; he contends that the defendants changed their policy from one that treated members of the military the same as other officers with respect to the scheduling of RDOs and leave to one that treated them less favorably than other officers.

Defendants point out in their reply that in a 1994 decision, the Second Circuit concluded that the scheduling of regular days off was not an "incident or advantage of employment" under section 4301(b)(3) of the Veterans' Reemployment Rights Act (VRRA), former 38 U.S.C. § 4301(b)(3). *Rumsey v. New York State Dep't of Correctional Servs.*, 19 F.3d 83, 91 (2d Cir. 1994). The VRRA was a predecessor statute to section 4311(a) of USERRA; it provided that "[a]ny person who seeks or holds a position [in the employ of a State] shall not be denied hiring, retention in employment, or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces." *Rumsey*, 19 F.3d at 90. The Second Circuit observed that "[c]ases holding that an employer has violated the Veterans' Act have involved more dire actions vis-à-vis the employee-

8

reservist's status as an employee: for example, loss of employment . . . or workplace assignment and duties assigned. . . ." *Id.* at 91.

The Court finds *Rumsey* unpersuasive for two reasons. First, the Second Circuit read a sort of severity requirement into the fairly broad language of section 4301(b)(3), even though the statute generally proscribed denial of "*any* . . . other incident or advantage of employment." Second, and more importantly, USERRA, unlike the VRRA, expressly recognizes the "opportunity to select work hours" as a benefit of employment that may not be denied on a discriminatory basis.

For these reasons, the Court concludes that Bello has alleged an actionable claim of discrimination under USERRA regarding denial of the opportunity to schedule his RDOs.

### b. Similarly situated

The defendants argue in the alternative that count 1 should be dismissed because Bello has not alleged that the defendants treated him differently from similarly situated officers. They have not offered authority for the proposition that Bello is required to prove this in order to prevail, let alone to plead it in order to state a claim upon which relief may be granted.

But even if this is required, Count 1 survives defendants' motion to dismiss. Bello makes a viable argument that he is similarly situated to officers not seeking military leave because all officers are entitled to nine RDOs and the opportunity to obtain other types of protected leave. He offers the following example:

> In January 2014, an officer was allowed to take three days of bereavement leave and two days of emergency leave . . . . The officer was not, however, required to schedule his RDOs to coincide with the leave of absence . . . which resulted in the officer having a total of 14 days off that

9

> month. Had Plaintiff been treated similarly, he would have had a total of 12 days off that same month (9 RDOs + 3 days military leave.) Instead, Plaintiff was denied any military leave and was required to use three of his RDOs to cover his military obligations. In practice, Plaintiff only had the benefit of six RDOs in January 2014 . . . .

Pl.'s Reply at 6-7. The Court may properly consider this illustrative scenario, which is consistent with Bello's allegation of discrimination, *see* Am. Compl. ¶ 99, even though it is not specifically described in Bello's complaint. *See, e.g., Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1038 (7th Cir. 2012) (per curiam).

For these reasons, defendants are not entitled to dismissal of count 1.

### 2. Retaliation (Count 2)

Section 4311(b) of USERRA prohibits an employer from taking an "adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter . . . ." Bello alleges that Skokie retaliated against him for "asserting and attempting to enforce his rights under USERRA" and that the individual defendants retaliated against him after he "complained and filed a grievance" regarding the new policy. Am. Compl. ¶¶ 107-08.

Defendants argue that count 2 is deficient because Bello has not adequately alleged that they disciplined him due to his complaint and grievance. They argue that "[t]o the extent Plaintiff claims that being placed on administrative leave . . . or being issued a one-day suspension for insubordination was an adverse employment action . . . that claim must . . . fail because there is nothing suspicious about the timing of those disciplinary events." Defs.' Opening Br. at 9. They cite the fact that these events took place four to twelve months after the alleged protected activity.

This argument lacks merit. Bello is not required to prove causation at this point

10

in the litigation. Rather, all he is required to do is allege it plausibly. It is perhaps true that if Bello ends up with nothing more to establish causation than an argument about temporal proximity, he will lose on summary judgment. But the Court is not entitled to assume that other evidence of causation is lacking simply because it is not detailed in Bello's complaint. Bello has squarely alleged a causal connection between his protected conduct and adverse action by the defendants, and as a result defendants are not entitled to dismissal of count 2.

**B.     Section 1983 (Counts 3 and 4)**

In count 3 of his amended complaint, Bello alleges that the defendants infringed on his right to freedom of association under the First Amendment "by implementing the Village's scheduling policy in a manner that discriminates against military service members, by retaliating against Officer Bello . . . and by taking an adverse employment action against Officer Bello due to his expressed affiliation with the Marine Corps." Pl.'s Am. Compl. ¶ 118. In count 4, Bello alleges that the defendants violated his right to equal protection under the Fourteenth Amendment "by implementing the Village's scheduling policy in a manner that discriminates against military service members, and by retaliating against Officer Bello when he complained that the scheduling policy was discriminatory." *Id.* ¶ 126.

The defendants contend that counts 3 and 4 should be dismissed because the availability of a remedy under USERRA precludes Bello's claims under section 1983. Bello maintains that USERRA precludes the Court from considering only claims of statutory violations brought via section 1983, not constitutional-law claims like those Bello has made.

11

"When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981). In *Sea Clammers*, the Court found that the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1251, and the Marine Protection, Research, and Sanctuaries Act of 1972 (MPRSA), 33 U.S.C. § 1401, provided sufficiently comprehensive enforcement mechanisms because they authorized both government officials and private citizens to sue. As a result, no remedy under section 1983 was available.

As the Court has indicated, Bello argues that this analysis applies only when the underlying claim brought via section 1983 is a federal statutory claim, not when the underlying claim, as here, is based on the constitution. But that is not the law. In *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009), the Court applied a similar analysis in determining whether a plaintiff could pursue relief under section 1983 for an equal protection claim based on conduct that was also covered by Title IX of the Education Amendments of 1972. The Court said that the key question "'is whether Congress meant the judicial remedy authorized by [the statute] to coexist with an alternative remedy available in a § 1983 action.'" *Id.* at 252 (quoting *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120-21 (2005)). The Court went on to say that

> [i]n cases in which the § 1983 claim alleges a constitutional violation, lack of congressional intent may be inferred from a comparison of the rights and protections of the statute and those existing under the Constitution. Where the contours of such rights and protections diverge in significant ways, it is not likely that Congress intended to displace § 1983 suits enforcing constitutional rights.

*Id.* at 252-53.

12

The Court held in *Fitzgerald* that Title IX did not displace section 1983 as a remedy for equal protection violations. That conclusion, however, was largely premised on two factors. First, Title IX does not have an express private right of action; rather, the Court had previously recognized an implied right of action. The Court said that the absence of an express statutory right to sue made it difficult to reach a conclusion that Congress had intended to displace section 1983 as an avenue for relief. *See id.* at 255-56. Second, the Court relied on the fact that the remedies available under Title IX were not coextensive with those available for a constitutional suit under section 1983; "Title IX's protections are narrower in some respects and broader in others." *Id.* at 256. This divergent coverage, combined with "the absence of a comprehensive remedial scheme" under Title IX, led the Court to conclude "that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for § 1983 suits as a means of enforcing constitutional rights." *Id.* at 258.

USERRA, of course, has an express private right of action. The Court stated in *Fitzgerald* that "'[t]he provision of an *express*, private means of redress in the statute itself is a key consideration in determining congressional intent . . . ." *Id.* at 256 (internal quotation marks omitted). Although the remedies under USERRA are not identical to those available under section 1983, they are a relatively close match. Like section 1983, USERRA permits a prevailing plaintiff to obtain an injunction in appropriate circumstances, as well as damages. *See* 38 U.S.C. § 4323(d)(1) & (e). USERRA (unlike section 1983) does not authorize damages for emotional distress, but it permits recovery for lost pay and benefits. *See id.* § 4323(d)(2). And although USERRA does not provide for punitive damages as such, it authorizes doubling the award for lost

13

pay/benefits if the violation is willful. *See id.* § 4323(d)(3).[1] In addition, as with a suit under section 1983, a prevailing plaintiff under USERRA may recover attorney's fees and litigation expenses. *See id.* § 4323(h)(2). USERRA also prohibits an award of costs or attorney's fees against a plaintiff suing under the statute, *see id.* § 4323(h)(1); in this way, the statute is more favorable to a plaintiff than section 1983.

In addition, it is worthy of note that USERRA expands the scope of liability for differential treatment of an employee based on military status beyond what the Constitution's Equal Protection Clause allows. Because military status is not considered a suspect class, a governmental entity can justify treating workers differently based on military status for equal protection purposes if there is a rational basis for the differential treatment. (Bello concedes this in arguing a different aspect of defendants' motion to dismiss. *See* Pl.'s Resp. Br. at 11.) Under USERRA, by contrast, if an employee's military status is the basis for its differential treatment of an employee, the employer is liable, period; there is no such thing as a "rational basis" defense.

The Court also notes that the factual and legal underpinnings for Bello's First and Fourteenth Amendment claims are a precise match for his claim of discrimination under USERRA. He alleges in count 3 that his First Amendment right to free association was infringed "by adopting a scheduling policy that discriminates . . . against members of the military." Am. Compl. ¶ 119. His Equal Protection claim in count 4 is worded identically. *Id.* ¶ 127. Thus this is not a case in which a plaintiff is asserting a constitutional claim based on a set of facts or allegations different from that underlying his USERRA claim.

There is very little law on whether USERRA supersedes a claim under section

---

[1] This is similar to the measure of damages under the Fair Labor Standards Act and the Age Discrimination in Employment Act.

1983 based on parallel allegations, and what there is does not contain a great deal of analysis. Two lower courts have concluded in similar circumstances that the remedy provided by USERRA displaces parallel constitutional claims under section 1983. In *Ferguson v. Walker*, 397 F. Supp. 2d 964 (C.D. Ill. 2005), an officer seeking relief under USERRA also brought constitutional claims under section 1983, arguing that a police department deprived him of a property interest by asking him to resign from a police position. The court held that the officer's constitutional claims were displaced by USERRA because the statute "'provides its own comprehensive enforcement mechanism. The Plaintiff may not now bypass that mechanism by alleging a constitutional violation and bringing suit directly under § 1983.'" *Id.* at 970 (quoting *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 437 (E.D. Pa. 1998). And in *Satterfield*, a former borough manager seeking relief under USERRA also pursued an equal protection claim under section 1983, which "hinge[d] upon his status as a military reservist." *Satterfield*, 12 F. Supp. 2d at 437. The court held that the claim was subsumed by USERRA, noting that "[t]his finding is bolstered by the fact that dismissal of the Plaintiff's equal protection claim does not prejudice his case, as he has stated a separate cause of action under USERRA." *Id.* at 438.

Though the Court does not adopt the reasoning of *Ferguson* or *Satterfield*, it reaches the same result as those cases. The Court concludes, for the reasons described earlier, that USERRA's comprehensive remedial structure reflects congressional intent to supersede a plaintiff's ability to assert parallel claims under section 1983. The Court dismisses counts 3 and 4 on this basis and thus need not address the defendants' arguments regarding whether Bello has otherwise asserted a

15

viable section 1983 claim or their claim of qualified immunity.

**C.    IWA (Count 5)**

   **1.    Retaliation**

Bello also asserts a claim under the Illinois Whistleblower Act (IWA). He alleges that the defendants disciplined him, ignored his requests for military leave, and prohibited him from contacting Skokie officials about the new leave policy in retaliation for complaining that the policy violates federal and state law. IWA prohibits employers from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).

The defendants contend that "Count V must be dismissed" because "the Village approached Plaintiff about the issue to discuss its scheduling practice *prior to* Plaintiff lodging any complaints or grievances." Defs.' Opening Br. at 16. As Bello points out, however, "[t]his argument is illogical, given that Plaintiff could hardly be expected to complain about a violation of the law before he knew about it." Pl.'s Resp. Br. at 14. The Court rejects defendants' "timing" argument.

The defendants offer another reason for dismissing count 5: "Plaintiff has not alleged that he has *refused* to participate in any Village activity . . . . Plaintiff asserts that he has *complained* about the Village's RDO policy." *Id.* at 13-14. This argument overlooks the fact that Bello relies not on 740 ILCS 174/20, which prohibits retaliation for refusal to participate in an illegal activity, but rather on 740 ILCS 174/15(b), which (as stated above) prohibits retaliation for disclosing information about a violation of law,

16

which quite obviously includes complaining.

Defendants also argue that "[w]hile Plaintiff may have complained of his belief that the RDO policy was in violation of a state or federal law, rule, or regulation, there is nothing to support the notion that Plaintiff reported any sort of illegal activity." Defs.' Reply at 14. The law, however, requires only that the employee have "reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). Bello's amended complaint satisfies this requirement. *See* Am. Compl. ¶ 131.

In *Martorana v. Village of Elmwood Park*, No. 12-6051, 2013 WL 1686869 (N.D.Ill. Apr. 18, 2013), the court found that plaintiff's allegation that the Village terminated him because he reported corruption within it was "sufficient to state a claim under the Whistleblower Act" even though "the Village gave a number of reasons as to why Plaintiff was fired." *Id.* at *4. Like the plaintiff in *Martorana*, Bello has alleged that the defendants took adverse action against him due to his complaint. He has stated a claim for relief under IWA.

### 2. Individual defendants

The individual defendants separately seek dismissal of Bello's IWA claim on the ground that they do not constitute "employers" potentially liable under the statute. The statute's prohibitions are directed at "employers," a term defined as including:

> an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, including a political subdivision of the State; a unit of local government; a school district; combination of school districts, or governing body of a joint agreement of any type formed by two or more school districts; a community college district, State college or university, or any State agency whose major function is providing educational services; any authority including a department, division, bureau, board, commission, or

other agency of these entities; and any person acting with the scope of his or her authority express or implied on behalf of those entities in dealing with its employees.

740 ILCS 174/5. The defendants rely on *Hernandez v. Cook County Sheriff's Office*, Nos. 13 C 7949 & 13 C 7163, 2014 WL 1339686 (N.D. Ill. Apr. 3, 2014), in which another judge of this court dismissed plaintiff's claim under IWA against individual defendants because they "clearly are not employers within the meaning of the statute." *Id.* at *3. The court concluded that the statute "makes clear that an employer may be held liable for the conduct of individuals acting on the employer's behalf . . . . [I]t does not then follow that such individuals who are not themselves employers in the first instance may be held individually liable as employers . . . ." *Id.*

This Court respectfully disagrees. In interpreting the IWA, an Illinois statute, a court looks to the "plain language" of the statute and refrains from reading into that language "exceptions, limitations, or conditions the legislature did not express." *Madigan v. Kinzer*, 232 Ill. 2d 179, 185, 902 N.E.2d 667, 671 (2009). The language of the statute "is the surest and most reliable indicator of legislative intent." *People v. Marshall*, 242 Ill.2d 285, 292, 950 N.E.2d 668, 673 (2011) (internal quotation marks omitted).

In the Court's view, the IWA is clear on its face. The definition of employer specifically includes an "individual." More importantly, the statute includes in the definition of employer "any person acting . . . on behalf of [an entity] in dealing with its employees." In this way, the statute makes it clear that individuals acting on behalf of an entity that one might colloquially understand to be a person's "employer" may likewise be considered "employers" potentially liable for violating the statute.

18

Defendants' argument asks the Court to read into the statute a limitation that its plain language does not include. The Court concludes that the individual defendants are not entitled to dismissal of count 5.

## Conclusion

For the foregoing reasons, the Court dismisses counts 3 and 4 of the amended complaint for failure to state a claim but otherwise denies defendants' motion to dismiss [dkt. no. 17]. Defendants are directed to answer counts 1, 2, and 5 by no later than September 16, 2014. The case remains set for a status hearing on September 4, 2014 at 9:30 a.m., at which time the Court will set a discovery schedule.

```
                                        _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge
```

Date: September 2, 2014