**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BALDO BELLO,

        Plaintiff,

   v.

VILLAGE OF SKOKIE, ANTHONY
SCARPELLI, ALFREDO LOPEZ, MICHAEL
KRUPNIK, and CHRISTA BALLOWE,

        Defendants.

Case No. 14 CV 01718

Judge Matthew F. Kennelly

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Baldo Bello, through his undersigned counsel, respectfully submits his memorandum of law in support of his motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the Court should grant summary judgment in favor of Plaintiff on Count I (USERRA discrimination) and Count IV (Illinois Military Leave of Absence Act (IMLOAA)) of the Second Amended Complaint (Dkt. 66), as well as on the Village's Third, Thirteenth, and Fourteenth Affirmative Defenses, which relate to the USERRA discrimination and IMLOAA claims (Dkt. 68, at 36, 40).

**STATEMENT OF MATERIAL FACTS**

Plaintiff has been employed by the Village of Skokie as a police officer since 2006, and he is also a staff sergeant in the U.S. Marine Corps Reserve. SOF ¶¶ 1-2. As a Village police officer, Plaintiff is entitled to certain employment benefits, among which are military leave for military duties, as well as nine regular days off (RDOs) per calendar month. SOF ¶¶ 14-20.

As part of his military obligations, Plaintiff is required to attend drill for military training

about once a month for several days at a time. SOF ¶ 21. Prior to the summer of 2012, Plaintiff regularly submitted requests for military leave for his drill dates, and he also requested RDOs that did not coincide with his drill dates. SOF ¶ 22-28. Plaintiff's requests were regularly granted by his chain of command. SOF ¶¶ 25, 28. In August 2012, however, Plaintiff's new incoming commander, Defendant Michael Krupnik, raised objections to Plaintiff's requests for military leave for monthly drills. SOF ¶¶ 8-10, 29. Commander Krupnik brought the matter to Defendants Christa Ballowe, Deputy Chief Lopez, and Chief Scarpelli (SOF ¶¶ 4-7,11, 30), and in May 2013, Deputy Chief Lopez, at the direction of Chief Scarpelli and Christa Ballowe, began denying military service members' requests for military leave and directing that they use RDOs instead in order to attend their monthly military obligations (SOF ¶¶ 31-32). Other types of leave, however, were not subject to the same requirement, despite the fact that all leave requests are supposed to be treated the same for purposes of scheduling in conjunction with RDOs. SOF ¶¶ 33-34.

Since June 2013, Plaintiff has continued to request military leave for his monthly military obligations. SOF ¶¶ 35-36. However, Plaintiff's requests for military leave have not been granted and instead the Village has mandated that Plaintiff's use his RDOs to attend his monthly military obligations. SOF ¶ 36. The Village does not, however, apply this same requirement to any other type of leave request. SOF ¶ 41.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addressing the motion, the Court must "construe all facts and draw all reasonable inferences in favor of the non-moving party." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th

Cir. 2011). If the moving party demonstrates the absence of disputed issues of material fact, then "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). To defeat summary judgment, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**ARGUMENT**

At this stage of the case, summary judgment in Plaintiff's favor is appropriate on two of his four claims. First, summary judgment is proper on Plaintiff's USERRA discrimination claim (Count I) because the undisputed evidence demonstrates that the Village's scheduling practice with respect to RDOs deprives Plaintiff of a benefit of employment and is based on Plaintiff's military status. Second, summary judgment is appropriate on Plaintiff's IMLOAA claim (Count IV) because the undisputed evidence demonstrates that the Village has not granted Plaintiff's requests for military leave for his monthly drill obligations since June 2013.

## I.   Count I – USERRA Discrimination

One of the primary purposes of USERRA is to "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). USERRA's antidiscrimination provision is section 4311(a), which states:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). Discrimination claims under this provision are analyzed under a burden-shifting framework, in which a plaintiff "bears the initial burden of showing by a preponderance

3

of the evidence that his military service was a substantial or motivating factor in the adverse employment action. If the employee makes that prima facie showing, the employer can avoid liability by demonstrating, as an affirmative defense, that it would have taken the same action without regard to the employee's military service." *Montoya v. Orange County Sheriff's Dep't*, 987 F. Supp. 2d 981, 1009 (C.D. Cal. 2013) (citations omitted); *see also* 38 U.S.C. § 4311(c)(1) (codifying the burden-shifting analysis).

### A. Plaintiff's Prima Facie Claim

As noted above, in order to prove his prima facie claim, Plaintiff must establish two elements. Plaintiff must show that (1) he suffered an adverse employment action, such as a denial of a benefit of employment, and that (2) his military service was a motivating factor for that action. Both elements are met in this case.

Regarding the first element, it is undisputed that the Village's scheduling practice has denied Plaintiff benefits of employment. USERRA defines a "benefit of employment" broadly to include

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes . . . the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2). In this case, since June 2013 the Village has forced Plaintiff to use his RDOs each month to attend his monthly military drill requirements, despite Plaintiff's requests for military leave during those dates, which the Village refuses to grant. *See* SOF ¶¶ 31-32, 35-36.

Both RDOs and military leave are employment benefits that Plaintiff is entitled to under the collective bargaining agreement and the Village's general employment policies. *See* SOF ¶¶ 15,

18. Given that Village police officers such as Plaintiff are allowed to select their preferred RDOs each month (SOF ¶¶ 22-23, 26), the Village's scheduling practice denies Plaintiff the opportunity to select work hours by mandating that he use his RDOs to perform his military service obligations in lieu of being granted military leave. This results in the abrogation of Plaintiff's employment benefits by reducing the number of RDOs available for Plaintiff to select each month. The number of RDOs that Plaintiff is required to use to cover his military service obligations depends on the length of his military drill obligations in a given month, which generally ranges from two to four days per month (SOF ¶ 21).

The analysis is straightforward: prior to June 2013, Plaintiff was able to request and was regularly granted nine RDOs in addition to military leave for his monthly training obligations, but after June 2013, Plaintiff was forbidden from doing so and his requested military-leave days are instead counted against his RDOs for a given month. A brief example from the record demonstrates the practical effect of the Village's actions: for the month of May 2014, Plaintiff was only permitted to select six RDOs because he was required to attend three days of military training during that month. SOF ¶¶ 37-39. Under the old scheduling practice, Plaintiff would have been able to select nine RDOs in addition to the three requested military-leave days. This constitutes the denial of a benefit of employment under USERRA (*cf.* Dkt. 29, at 6-9 (order on Defendants' motion to dismiss)), and it is only one of many examples in the record since June 2013. *See generally* SOF ¶¶ 35-36 and exhibits thereto.

The Village may contend that Plaintiff is still receiving nine RDOs per month, just not on the days he prefers. The problem with this line of reasoning is twofold. First, as discussed below, the record is undisputed that only military members are subject to this mandatory limitation on their ability to schedule their RDOs. *See infra* pt. I.B. Second, military leave is also a benefit of

employment that Plaintiff is entitled to (SOF ¶¶ 15, 19-20), and the record is clear that the Village has not granted Plaintiff's requests to use military leave for his monthly drill obligations since June 2013 (SOF ¶¶ 35-36). By refusing to grant Plaintiff's requests for military leave and instead requiring him to cover his drill dates with RDOs, the Village actually and by necessary implication denies Plaintiff the right to military leave that he is guaranteed under the CBA and Village employment policies (in addition to violating IMLOAA, as discussed *infra*, Part II). Consequently, even if the Village were to be construed to be "allowing" Plaintiff nine RDOs each month, the Village is still denying Plaintiff the right to military leave. Regardless of the characterization, under either analysis the Village is denying Plaintiff a benefit of employment, whether that right is considered to be military leave for monthly drill or to schedule his nine RDOs.

As to the second element, the record contains direct evidence that Plaintiff's military status was not only a motivating factor for the Village's action, but was in fact the explicit basis for the action that the Village took. Military status is a motivating factor if the employer "relied upon, took into account, considered, or conditioned its decision on" the employee's military service. *Croft v. Village of Newark*, 35 F. Supp. 3d 359, 367 (W.D.N.Y. Aug. 5, 2014) (quotation marks omitted). The undisputed evidence in this case is clear that the Village's scheduling practice is expressly premised on Plaintiff's requests for military leave for his monthly drill obligations. SOF ¶¶ 29-32. Plaintiff's military status is therefore a motivating factor in the adverse employment action.

Because the undisputed evidence demonstrates that the Village's scheduling practice denies Plaintiff a benefit of employment and that his military status is a motivating factor behind the Village actions, Plaintiff is entitled to summary judgment in his favor on his prima facie

USERRA discrimination claim.

### B. Defendants' Third Affirmative Defense

In their Third Affirmative Defense (Dkt. 68, at 36), Defendants assert that they "would have made, and have made, the same decision to schedule unpaid days off concurrent with unpaid benefit time, paid benefit time, and personal non-work related obligations in the absence of any alleged protected activity or military status under USERRA." This appears to be an assertion of the legal standard under section 4311(c)(1), which permits employers to avoid liability if they "can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 18 U.S.C. § 4311(c)(1).

The undisputed evidence in the record, however, unequivocally demonstrates that Defendants cannot meet that burden. Chief Scarpelli, the Village's designated representative under Federal Rule of Civil Procedure 30(b)(6), expressly testified that the Village's scheduling policy with respect to RDOs and leave applies *only* to military service members such as Plaintiff. SOF ¶ 33. Only police officers such as Plaintiff who request military leave in order to serve their monthly drill obligations are required to use their RDOs rather than being granted leave, while police officers who request any other kind of non-military leave are not similarly required to do so. SOF ¶¶ 33-34. Moreover, there are only two considerations that supervisors are supposed to take into account in creating the monthly schedule for a particular shift: officer preference and the needs of the police department. SOF ¶ 26. The Village's express policy of singling out requests for military leave for monthly drill for less favorable treatment than requests for any other type of leave is not based on any staffing need of the police department (SOF ¶¶ 33, 41), and there is consequently no basis for Defendants' rejection of Plaintiff's requests for RDOs that do not

coincide with his monthly drill obligations and requests for military leave other than his military status.

Based on the undisputed evidence, Defendants cannot prove that they would have taken the same actions regardless of Plaintiff's military status. Indeed, the undisputed evidence demonstrates that Defendants took the actions they did expressly because of Plaintiff's military status and their policy specifically targets only military service members. Summary judgment in Plaintiff's favor on Defendants' Third Affirmative Defense is therefore proper.

### C. Liability of the Individual Defendants

In addition to the Village, the undisputed record demonstrates that each of the individual defendants is also liable for the violation of section 4311(a). Liability under USERRA extends to individuals in an employee's supervisory and managerial chain of command who took part in the adverse action, as well as other individuals who were involved in the events that led to the adverse employment action. *See generally Croft*, 35 F. Supp. 3d at 367-68 (collecting cases and other authority).

In this case, each of the individual defendants directly participated in the Village's formulation and implementation of the discriminatory scheduling practice. The entire chain of events was initiated by Commander Krupnik (SOF ¶¶ 29-30), who was Plaintiff's shift commander and supervisor (SOF ¶ 9) and who was involved in discussions with the other Defendants regarding the proposed change to the Village's scheduling practice (SOF ¶ 30). Deputy Chief Lopez not only held final approval authority over Plaintiff's monthly schedule (SOF ¶ 25) but also personally ordered that military service members' requests for military leave be denied and substituted for RDOs (SOF ¶ 31) and he personally informed Plaintiff that, beginning in June 2013, Plaintiff would be required to schedule RDOs to cover his military drill

obligations (SOF ¶ 32). Chief Scarpelli, as the Chief of Police, was the most senior officer in Plaintiff's chain of command and was responsible for policies regarding military leave, and he directed Deputy Chief Lopez to enforce the discriminatory scheduling practice. SOF ¶¶ 4-5, 31, 42. Last, but by no means least, Personnel Director Christa Ballowe was involved in and ultimately responsible for directing the police department to implement the discriminatory scheduling practice. *See* SOF ¶¶ 31, 42.

The undisputed evidence in the record thus demonstrates that each of the individual defendants is subject to liability under USERRA for the violation of section 4311(a). Summary judgment against each of the individual defendants on Count I is therefore proper.

## II.  Count IV – Violation of the Illinois Military Leave of Absence Act

Summary judgment is also proper on Plaintiff's claim for violation of IMLOAA and the Village's related affirmative defenses. Although based on substantially the same facts as Plaintiff's USERRA discrimination claim, the legal framework for analyzing Plaintiff's IMLOAA claim is entirely separate from the USERRA analysis.

The essence of Plaintiff's IMLOAA claim is that the Village has refused to grant him military leave in order to fulfill his monthly reserve drill obligations, and it is undisputed that the Village has not granted Plaintiff's requests for military leave for monthly drill since June 2013. SOF ¶¶ 35-36. The Village's defense to this claim is that the Village has never prohibited Plaintiff from attending drill because he is always allowed to use his unpaid RDOs to attend military obligations. The dispute between the parties regarding this particular claim is whether IMLOAA requires the Village to place Plaintiff in a paid military leave-of-absence status while he fulfills his monthly reserve drill obligations.

**A. Plaintiff is entitled to summary judgment on his IMLOAA claim**

This specific question is an issue of first impression in Illinois, and there is very little Illinois precedent on IMLOAA in general. The starting point of any analysis must therefore be the language of the statute, which provides as follows:

> Any full-time employee of the State of Illinois, a unit of local government, a public institution of higher education (as defined in Section 1 of the Board of Higher Education Act), or a school district, other than an independent contractor, who is a member of any reserve component of the United States Armed Forces or of any reserve component of the Illinois State Militia, shall be granted leave from his or her public employment for any period actively spent in military service, including:
> (1) basic training;
> (2) special or advanced training, whether or not within the State, and whether or not voluntary;
> (3) annual training; and
> (4) any other training or duty required by the United States Armed Forces.
> During these leaves, the employee's seniority and other benefits shall continue to accrue.

5 ILCS 325/1(a). Additionally, with respect to leaves under paragraph (a)(2)-(4), the statute provides that "if the employee's daily rate of compensation for military activities is less than his or her daily rate of compensation as a public employee, he or she shall receive his or her regular compensation as a public employee minus the amount of his or her base pay for military activities." 5 ILCS 325/1(a). This compensation is generally referred to as the "differential." *See also* 5 ILCS 325/1(c) (explaining how to calculate the differential).

Prior to 2010, IMLOAA applied only to leaves for basic training, special or advanced training, and annual leave. Effective January 1, 2010, however, IMLOAA was amended to include "any other training or duty required by the United States Armed Forces." *See* Pub. L. 95-331 (eff. Jan. 1, 2010). Consequently, in its current form the statute mandates that public employers, including municipalities such as the Village, do two things: (1) grant employees leave from their employment to satisfy their military training or duty requirements, and (2) pay

the employee a differential for the leave period if the employee's rate of regular compensation exceeds their military pay rate.

The Village's practice, however, is altogether different. Since June 2013, the Village has refused to grant Plaintiff's requests for military leave and instead forces him to use his unpaid RDOs to attend to his military obligations. By doing this, the Village not only evades payment of the differential but also costs Plaintiff the use of RDOs that he would otherwise be entitled to. For example, in April 2014, Plaintiff submitted a request for the dates of May 16, 17, and 18 for military leave in order to attend his military drill obligations. SOF ¶¶ 37-38. The Village, however, did not grant this request and instead required Plaintiff to schedule three of his nine RDOs to cover his military service obligations on May 16, 17, and 18. SOF ¶¶ 39. The differential for this period was $96.90 per military drill day, totaling $290.70. SOF ¶ 40. By requiring Plaintiff to use three unpaid RDOs in lieu of being placed on paid military leave in May 2014, the Village deprived Plaintiff of $290.70 that he was owed for military leave and three unpaid days off that he was entitled to. This is a clear violation of the plain terms of IMLOAA because Plaintiff was not granted military leave and he was not paid the differential. Summary judgment in Plaintiff's favor on the IMLOAA claim is therefore proper.

## B. Plaintiff is entitled to summary judgment on the Village's Thirteenth Affirmative Defense

In its Thirteenth Affirmative Defense, the Village raises several separate points in defense of its actions. *See* Dkt. 68, at 40 (Thirteenth Affirmative Defense). First and foremost, the Village contends that IMLOAA "does not require the Village to pay its employees to attend weekend drills. In fact, [IMLOAA] does not apply to monthly weekend drills." Dkt. 68, at 40. The plain terms of the statute, however, require employers to grant employees military leave for "any other training or duty required by the United States Armed Forces." 5 ILCS 325/1(a)(4). Given that

monthly drill attendance is a requirement of service in the military reserve (*see, e.g.*, 32 C.F.R. § 101.5 (reserve training requirements)), it is difficult to see how the Village's position that IMLOAA does not cover monthly drill could be justified. Illinois principles of statutory construction are clear that "[w]hen construing a statute, a court should look to the plain language of the statute to ascertain and give effect to the intent of the legislature," and the Court must interpret the statute "in the manner in which it was written and must not read into it exceptions, limitations or conditions that are not already there." *Carrol v. Department of Employment Security*, 907 N.E.2d 16, 22 (Ill. App. 2009). By asserting that monthly drill obligations are not covered by the statute despite the statute's unambiguous application to "any other training or duty required," the Village is asking the Court to read an exception into the statute that is simply not there.

While there are no Illinois cases on point, similar arguments to Village's position on this issue have been rejected by other state courts interpreting analogous statutes. *See generally, e.g.,* Samuel W. Asbury, Comment, *A Survey and Comparative Analysis of State Statutes Entitling Public Employees to Paid Military Leave*, 30 Gonz. L. Rev. 67, 84-85 (1994) (section entitled "Do Weekend Drills Count Toward the Paid Leave?"). For example, in *Britton v. Jackson*, 414 So. 2d 966 (Ct. Civ. App. Ala. 1981), the court examined the Alabama military leave of absence statute, which provided for leaves of absence for "other training." *Id.* at 967. The court held that monthly drill was covered by the statute's provisions. *Id.* at 968. The court observed that the statute

> provides for 'other training' as well as for 'field or coast defense' training. We have not been given any valid reason why 'other training' does not include so-called 'weekend drills' when such training sessions are just as important as the extended summer training sessions. A member of the National Guard or Military Reserves cannot remain a member of those organizations unless he or she participates in a certain number of weekend training sessions each year.

*Id.* at 967. The court's reasoning in *Britton* applies with equal force here to IMLOAA, where there is no express provision exempting monthly drill from the provisions of the statute. Indeed, if the Illinois legislature intended to exempt monthly drill from IMLOAA, it could easily have done so. *See, e.g.*, *Bowers v. City of San Buenaventura*, 75 Cal. App. 3d 65, 74 (1977) (examining California's military-leave statute and concluding that a legislative amendment had been intended to remove monthly drills from the scope of the statute).

The Village also asserts that, "[b]y scheduling RDOs and weekend drills to coincide, Plaintiff earns the same base pay from the Village as other members of the Police Department because they are generally all scheduled to work the same number of days each month." Dkt. 68, at 40. The exact relevance of this contention is unclear, but it is irrelevant to the Village's liability. It appears that the Village contends that as long as Plaintiff receives the same base compensation from the Village regardless of whether he is placed on military-leave status for drill or he is forced to use RDOs, then there cannot be a violation of IMLOAA. Yet this position is contrary to the plain terms of the statute, which mandate that an employee "shall be granted leave from his or her public employment" in order to perform military service. Even if the amount that the employer must pay as a differential is zero (that is, in a situation where an employee's military pay exceeds their regular compensation), the statute still requires that military leave be granted. Lack of monetary damage to an employee does not excuse an employment practice that violates the statute. At most, it would simply limit monetary damages for a violation but would not preclude either liability or injunctive or declaratory relief.

Further, the Village's position misses the point. The Village's practice of refusing to grant military leave and forcing Plaintiff to use his RDOs to cover his military obligations deprives Plaintiff of time off from work that he would otherwise be entitled to, simply because he serves

in the military reserve. This is an outcome that is directly at odds with the public policy behind statutes such as IMLOAA, which are designed to provide an incentive to serve in the military reserves. *See, e.g.*, Asbury, *supra*, at 73 & nn.39-48 (discussing public policy and collecting cases). The Village's practice, in contrast, seems designed to single out and punish Plaintiff and other military service members for their military service by denying them military leave in violation of both the letter and spirit of IMLOAA.

Finally, the Village makes three assertions. The Village asserts that IMLOAA "does not require the Village to schedule its employees to work on a day that the employee is expected to attend to military duties." Dkt. 68, at 40. The intended point of this assertion is unclear, but it is in any event irrelevant. Plaintiff is not seeking to require the Village to schedule him for work concurrently with his military obligations but instead to simply grant his requests for military leave, as IMLOAA expressly requires. *See* 5 ILCS 325/1(a). The Village also asserts that "unpaid days off are not a benefit of employment." Dkt. 68, at 40. This assertion is also irrelevant, and it indicates that the Village has conflated the requirements of IMLOAA, which does not reference "benefits of employment," with USERRA, which prohibits employers from denying such benefits to military service members. *See, e.g.*, 38 U.S.C. § 4311; *see also supra*, pt. I. The Village further asserts that "Plaintiff has been treated the same as and/or better than all other military and non-military members of the Village of Skokie." Dkt. 68, at 40. IMLOAA, however, is not an antidiscrimination statute, and so an employer's liability for a violation is not dependent on whether military service members are treated the same as non-service members. The statute instead imposes affirmative obligations on an employer with respect to military service members, regardless of how the employer treats other employees. In fact, as noted above, IMLOAA and other analogous statutes are specifically intended to grant military service

members employment benefits that may not be available to other employees. *See, e.g.*, Asbury, *supra*, at 73. Whether the Village has treated Plaintiff "the same and/or better than" other Village employees is irrelevant to the Village's liability for violating IMLOAA.

In light of the above points, summary judgment for Plaintiff on the Village's Thirteenth Affirmative Defense is appropriate.

### C. Plaintiff is entitled to summary judgment on the Village's Fourteenth Affirmative Defense

The Village's Fourteenth Affirmative Defense (Dkt. 68, at 40-41) asserts that Plaintiff's IMLOAA claim is preempted by section 15 of the Illinois Public Labor Relations Act (IPLRA) (5 ILCS 315/15). Section 15 states, in pertinent part, "In case of any conflict between the provisions of this Act and any other law . . . , executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." 5 ILCS 315/15. While the Village asserts that "[a]ny claim by Plaintiff to receive more time off than provided for by the collective bargaining agreement is preempted and, accordingly, there is no violation of [IMLOAA]" (Dkt. 68, at 41), the Village does not identify which, if any, provision of the IPLRA is ostensibly in conflict with IMLOAA. Consequently, the ILPLRA's conflict-of-laws provision does not apply, which necessarily means that as a matter of law Plaintiff's IMLOAA claim cannot be preempted by the ILPLRA. Summary judgment for Plaintiff on the Village's Fourteenth Affirmative Defense is therefore proper.

### CONCLUSION

For the reasons stated above, the Court should grant summary judgment in Plaintiff's favor on Counts I and IV, as well as on the Third, Thirteenth, and Fourteenth Affirmative Defenses.

Respectfully Submitted,

BALDO BELLO

*s/James G. Vanzant*

_____

Attorney for Plaintiffs

*Filed electronically on July 17, 2015*

Dana L. Kurtz, Esq. (ARDC# 6256245)
James G. Vanzant, Esq. (ARDC# 6304196)
KURTZ LAW OFFICES, LLC
32 Blaine Street
Hinsdale, Illinois 60521
Phone:  630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us
E-mail: jvanzant@kurtzlaw.us

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF System on July 17, 2015.

Yvette A. Heintzelman                    YHeintzelman@CBSLawyers.com
Benjamin E. Gehrt                        BGehrt@CBSLawyers.com
Roxana M. Crasovan                       RCrasovan@CBSLawyers.com


                                    *s/James G. Vanzant*
                         _____

                         *Electronically filed on July 17, 2015*

17